MARY N. McKEE, Plaintiff, *v.* RALPH H. McKEE, Defendant.

Supreme Court, Special Term, New York County, February 19, 1943.

*Bregman & Bregman* for defendant.

*Theodore Studwell* for plaintiff.

KOCH, J. Defendant moves by an order to show cause to vacate and set aside a final judgment and decree of separation entered herein on June 6, 1936.

In support of his application defendant places principal reliance upon the recent decision of the Supreme Court of the United States in the case of *Williams* v. *North Carolina* (317 U. S. 287). The holding in that case is that the validity of a divorce decree obtained in accordance with the requirements of procedural due process in a State by a spouse who under the law of such State had acquired a *bona fide* domicile there must, under the full faith and credit clause of the Federal Constitution (art. IV, § 1), be accorded extraterritorial recognition, although the spouse who remained in the State of the original matrimonial domicile did not appear in the divorce suit and was not served with process in the State in which the divorce was granted.

There is an important distinction, however, to be noted between the situation presented in the *Williams* case and that in the case at bar. In the *Williams* case the Supreme Court assumed that the petitioners had a *bona fide* domicile in Nevada. The court said: " We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada."

In the case at bar this court has made a finding of fact that " the defendant did not move to the State of Nevada in good faith and did not intend to reside there permanently." This court has also found, as conclusions of law, that:

" 1. The matrimonial domicile of the plaintiff and defendant is not and never was in the State of Nevada.

" 2. The courts of the State of Nevada never obtained jurisdiction of the plaintiff or of the marriage between the plaintiff and defendant and its decree, therefore, was invalid and did not dissolve the marriage between plaintiff and defendant."

In the *Williams* case, therefore, the court proceeded upon the assumption that the domicile of the petitioners in Nevada was *bona fide* and not sham. In the matter before this court, the contrary is the fact. In the *Williams* case the majority opinion still leaves it within the power of the courts of this

State "to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court," New York finds that no *bona fide* domicile was acquired in Nevada.

It is apparent, therefore, that the defendant herein has not brought himself within the purview of the decision in the *Williams* case and that case is inapplicable to the situation in which the said defendant finds himself.

But there are other compelling and persuasive reasons why this application should be denied. These reasons find their basis in the rule of law known as *res judicata*. The defendant has never appealed from the final judgment and decree of separation entered herein on June 6, 1936, in favor of the plaintiff, and his time to do so has long since expired. This decree remains final, conclusive, and binding upon the parties even though the law upon which the decree is based should thereafter be declared unconstitutional or otherwise invalid. If this were not so, a serious blow would be dealt to the principles of stability of judgments and finality of litigation. Authorities are not lacking to illustrate the point.

In *Ohio Life Insurance and Trust Co.* v. *Debolt* (16 How. 416, at p. 432), the court, by TANEY, J., said: "Indeed, the duty imposed upon this court to enforce contracts honestly and legally made, would be vain and nugatory, if we were bound to follow those changes in judicial decisions which the lapse of time, and the change in judicial officers, will often produce. * * * And the sound and true rule is, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the State, or decision of its courts, altering the construction of the law." Our own Court of Appeals has laid down the same rule. (*Harris* v. *Jex*, 55 N. Y. 421; *Miller* v. *Tyler*, 58 N. Y. 477.)

In *Miller* v. *Tyler* (*supra*), the court said (p. 480): "The reconsideration of the question by the Supreme Court of the United States, with a result adverse to its first judgment, did not affect the existing judgments of State courts, or call for a modification and change of their records to meet the changed views and judgment of that court. A contrary doctrine would lead to the absurd necessity of correcting and modifying all judgments, whether existing and in force or satisfied and fully executed, upon the enunciation by a court of superior authority of a doctrine in conflict with and legally subversive of the prin-

ciples upon which they were rendered. If judgments are erroneous they can only be reviewed and reversed or modified by error or appeal in the mode prescribed by law.'' To the same effect see *Chicot County Dist.* v. *Bank* (308 U. S. 371); *Park Hill Co.* v. *Herriot* (41 App. Div. 324); and *Dauchey Co., Inc.,* v. *Farney* (105 Misc. 470).

So that, even if the case at bar were similar in all its features to the *Williams* case, this court would not indulge in any theory of relation back to vacate the judgment which is attacked upon this application.

In view of the foregoing considerations, this motion is denied.